**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JUDSON JAMES SPENCER, JR.,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. 3:14-1704** |
| **v.** | : | |
| **BOROUGH OF MOOSIC, ET AL.,** | : | **(JUDGE MANNION)** |
| **Defendants.** | : | |

**M E M O R A N D U M**

**I.    INTRODUCTION**

Presently before the court are several motions to dismiss the plaintiff's amended complaint: a motion to dismiss filed by the Borough of Moosic and Borough of Moosic Police Officer James A. Giehl, (Doc. 47); a motion to dismiss filed by the City of Pittston, (Doc. 48); a motion to dismiss filed by the Borough of Hughestown, (Doc. 50); and a motion to dismiss filed by the Borough of Exeter and Borough of Exeter Police Officer Thomas Farrell[1], (Doc. 51). This case involves a September 2012 incident in which the plaintiff was arrested after driving an All-Terrain Vehicle ("ATV") on a road near Montage Mountain. The plaintiff, Judson James Spencer, Jr., alleges that police officers used excessive force during his arrest. The plaintiff further claims that police officers failed to intervene while he was allegedly being

---

[1]The amended complaint refers to Defendant Thomas "Ferrell," but the Defendant has indicated that the correct spelling of his name is "Farrell." (Doc. 51, Doc. 52).

assaulted by other officers. In addition, the plaintiff alleges that municipal defendants inadequately supervised and trained their police officers, and that the policies and/or customs of the defendant municipalities allowed for the beating of suspects such as himself. The plaintiff brings his complaint pursuant to 42 U.S.C. §1983 and asserts that he was deprived of his rights, privileges, and immunities under the Fourth and Fourteenth Amendments of the United States Constitution. For the reasons discussed below, the motions will be **GRANTED IN PART** and **DENIED IN PART**.

## II.    FACTUAL BACKGROUND

The following allegations are taken directly from the plaintiff's amended complaint. (Doc. 43 at ¶¶15-46). The court accepts any factual allegations as true for purposes of the instant motions to dismiss. According to the amended complaint, the plaintiff was driving an ATV on September 2, 2012 on a road near Montage Mountain. The plaintiff passed a Sport Utility Vehicle ("SUV") on the shoulder of the road, and the SUV began to follow the plaintiff with its emergency lights on. The plaintiff did not pull over and continued driving the ATV down the road. The plaintiff contends he assumed the SUV's emergency lights were on simply as an indication that he should exit the roadway, not pull to the side of the road.

Eventually the plaintiff exited the roadway and "pulled between Lanes Cranes and an adjacent building." (Id. at ¶24). The plaintiff claims he heard

something hit the building on his left, which made him "realize[] something was wrong," and he stopped driving. (Id. at ¶26). The plaintiff then allegedly looked behind him and saw multiple police vehicles and officers outside of the vehicles with guns drawn. The plaintiff immediately got off his ATV and went down on his knees with his hands in the air.

Borough of Hughestown Police Officer Robert Evans ("Defendant Evans") allegedly approached the plaintiff, drew his gun, pointed it in the plaintiff's face, and began screaming at the plaintiff. Next, Borough of Moosic Police Officer James A. Giehl ("Defendant Giehl"), Borough of Exeter Police Officer Thomas Farrell ("Defendant Farrell"), and Defendant Evans grabbed the plaintiff's arms, pinned them behind his back, spun him around, and forced his head into the pavement, face first. The plaintiff avers that these officers continued to hit his head and put their knees into his back. In addition, plaintiff claims that none of the defendant police officers, including the John Doe defendants working for the Borough of Moosic, the Borough of Hughestown, the Borough of Exeter, and the City of Pittston, respectively, made any attempt to prevent or interrupt the assault, or to protect the plaintiff, despite having the opportunity to do so. According to the complaint, the plaintiff was subsequently arrested and charged with "Disorderly Conduct Engage in Fighting and Operation on Streets and Highways." (Id. at ¶40).

The plaintiff contends that he did not present any danger to the police officers or anyone at the scene, and that he did not resist the police officers.

He also claims that he did not violate any laws as described in police paperwork, and that all charges were withdrawn. The plaintiff asserts that he was therefore unlawfully assaulted, arrested, and detained. The plaintiff alleges the officers' conduct caused severe injuries, some of which required medical treatment and resulted in permanent scarring. Moreover, the plaintiff continues to suffer from mental harm, including trauma, anxiety, and fear.

## III.   PROCEDURAL HISTORY

On August 29, 2014, the plaintiff commenced this action by filing the original complaint. (Doc. 1). On January 5, 2015, the plaintiff filed an amended complaint after the filing of motions to dismiss by several defendants. (Doc. 43). The amended complaint consists of three counts, each of which allege violations of the plaintiff's constitutional rights under the Fourth and Fourteenth Amendments, specifically the right to be free from excessive use of force by an officer, the right to be free from malicious prosecution, the right to be free from false arrest, and the right to due process of law. Count I alleges liability against individual defendants Giehl, Evans, Farrell, and John Does I-XX arising out of affirmative actions taken by them. Count II alleges bystander liability against individual defendants Giehl, Evans, Farrell, and John Does I-XX due to their inaction. Count III alleges municipal liability against the Borough of Moosic, the Borough of Hughestown, the Borough of Exeter, and the City of Pittston (collectively, the "Municipal Defendants") for

their unconstitutional policies and/or customs, and for their inadequate training of police officers. In the amended complaint, the plaintiff seeks compensatory damages, attorney's fees, costs, and interest from each defendant. The plaintiff later stated in his opposition papers that he was withdrawing his claims for malicious prosecution, false arrest, and false light invasion of privacy. (Doc. 60 at 14, Doc. 62 at 13).

On January 19, 2015, the Borough of Moosic filed a motion to dismiss, (Doc. 47), followed by a brief in support on February 2, 2015, (Doc. 53). The City of Pittston then submitted a motion to dismiss, (Doc. 48), and a supporting brief on January 20, 2015, (Doc. 49). On January 26, 2015, the Borough of Hughestown also filed a motion to dismiss, (Doc. 50), and a supporting brief on February 5, 2015, (Doc. 55). The Borough of Exeter filed the final motion to dismiss, (Doc. 51), along with a supporting brief on January 28, 2015, (Doc. 52). On March 6, 2015, the plaintiff filed four corresponding briefs in opposition to each of the defendants' motions to dismiss (Doc. 59, Doc. 60, Doc. 61, Doc. 62). On March 20, 2015, both the Borough of Hughestown and the Borough of Moosic filed reply briefs. (Doc. 64, Doc. 65). As the arguments raised in the defendants' motions to dismiss substantially overlap, the court considers the motions collectively. To the extent necessary, the court will point out any argument applicable only to a specific party.

## IV.   LEGAL STANDARD

### A. Rule 12(b)(6)

The defendants brought motions to dismiss pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 544. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. at 545).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. See Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

## B. Section 1983

To state a claim under §1983, a plaintiff must meet two threshold requirements. A plaintiff must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). If a defendant fails to act under color of state law when engaged in the alleged misconduct, a civil rights claim under §1983 fails as a matter of jurisdiction, Polk Cnty. v. Dodson, 454 U.S. 312, 315 (1981), and there is no need to determine whether a federal right has been violated. Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). See also Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (citing Rode).

## V. DISCUSSION

The amended complaint asserts causes of action for excessive use of force, malicious prosecution, false arrest, and false light invasion of privacy against defendants. The plaintiff subsequently stated in his opposition papers

that he is withdrawing his claims for malicious prosecution, false arrest, and false light invasion of privacy against defendants. (Doc. 60 at 14, Doc. 62 at 13). As such, the Court notes that these claims have been withdrawn. The plaintiff's §1983 claims for excessive use of force under the Fourth and Fourteenth Amendments remain.

### A. Fourth Amendment

The plaintiff alleges that the actions or inactions of the defendants "deprived [him] of [his] rights, privileges and immunities under the Fourth and Fourteenth Amendments to the United States Constitution and in particular the right to be free from excessive force while being detained/arrested." (Doc. 43 at ¶45). The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." U.S. Const. amend. IV. A "claim for excessive force under the Fourth Amendment requires a plaintiff to show that a seizure occurred and that it was unreasonable." Curley v. Klem, 298 F.3d 271, 279 (3d Cir. 2002). The "test of reasonableness" is "not capable of precise definition or mechanical application," Graham v. Connor, 490 U.S. 386, 396 (1989) (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)). It involves an inquiry of whether the officer's actions are "objectively reasonable" under the totality of circumstances. Graham, 490 U.S. at 397. In making this determination, the court must evaluate several factors, including the severity

of the crime, whether the suspect was attempting to evade arrest by flight or actively resisting arrest, and whether the suspect posed an immediate threat to officers or to the public. Id. at 396.

### I. The Individually Named Defendants

With respect to Count I of the amended complaint, Defendant Giehl argues that the plaintiff fails to allege specific, unconstitutional conduct against him. (Doc. 53 at 14). Defendant Farrell submits that the plaintiff has failed to allege sufficient facts to maintain a claim against him. (Doc. 51 at ¶19). The court disagrees with Defendant Giehl and Defendant Farrell (collectively, the "Individual Defendants") because the plaintiff has alleged enough facts regarding the conduct of each police officer which, if found to be true, would entitle the plaintiff to relief on his Fourth Amendment claim. The plaintiff's allegations against Defendant Giehl and Defendant Farrell are substantially similar. The plaintiff alleges that while he was driving an ATV on the road and was being followed by an SUV, he believed the SUV's emergency lights were on simply to direct him to exit the roadway and not to pull over. After exiting the roadway, he did not stop until he heard something hit the building on his left. It was only at this point that he noticed multiple police vehicles and officers outside of the vehicles with guns drawn. According to plaintiff's account, he was not trying to evade arrest.

Upon seeing the officers, the plaintiff asserts that he immediately got off

his ATV and went down on his knees with his hands in the air. He offered no resistance against the officers. Plaintiff claims that Defendant Evans then allegedly approached the plaintiff, drew his gun, pointed it in plaintiff's face, and began screaming at him. Next, the plaintiff avers that Defendant Evans, Defendant Giehl, and Defendant Farrell grabbed plaintiff's arms, pinned them behind his back, spun him around, and forced his head into the pavement, face first. They continued to hit his head and put their knees into his back. In the midst of this unprovoked assault, the plaintiff alleges that no officers on the scene intervened in any way. The plaintiff demonstrates personal involvement of the Individual Defendants, acting under the color of law, and provides specific examples of excessive force.

Regarding the reasonableness of the Individual Defendants' actions, the pleadings do not indicate that the charged offense - disorderly conduct for operating the ATV on streets and highways - is so severe to warrant the particular use of alleged force. Nor do the pleadings indicate that the plaintiff attempted to flee the scene or that he was a safety threat. Since the plaintiff did not immediately pull over when the SUV displayed its emergency lights, the officers may have had a heightened sense of threat for their safety and others' safety. Further, the plaintiff alleges he was charged with disorderly conduct for engaging in fighting, suggesting that he may have acted violently towards the officers. Nonetheless, the facts, as alleged in the complaint, do not indicate any clear attempts by the plaintiff to evade law enforcement or

violent actions taken by him. The facts construed in the light most favorable to the plaintiff are sufficient to state a claim under Count I that the plaintiff's Fourth Amendment rights were violated, upon which relief may be granted.

With respect to Count II of the amended complaint, the plaintiff claims that neither of the Individual Defendants made any attempt to prevent or interrupt the assault, despite having the affirmative duty to do so. (Doc. 43 at ¶¶33-34). Defendant Giehl contends that the plaintiff fails to allege that he had reason to know excessive force was being used or had the realistic opportunity to stop any such force. (Doc. 53 at 15). Defendant Farrell asserts that the plaintiff has not pleaded sufficient facts to maintain any claim against him. (Doc. 51 at ¶19). A police officer can only be held liable for bystander liability for failing to intervene in an unprovoked beating under §1983 if there is a realistic and reasonable opportunity to intervene. See Smith v. Mensinger, 293 F.3d 641, 650-651 (3d Cir. 2002) (holding that "a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under §1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so"). Again, the facts construed in the light most favorable to the plaintiff are sufficient to state a claim that the plaintiff's constitutional rights were violated. As described above, the plaintiff alleges that the Individual Defendants had ample opportunity to stop the assault but failed to do so. The motions to dismiss the bystander liability claims against the Individual Defendants are premature at

this stage of the proceedings. Therefore, the Individual Defendants' motions to dismiss the amended complaint on the ground that the plaintiff did not state a cause of action for a Fourth Amendment violation under Count II will be denied.

The Individual Defendants argue that they are entitled to qualified immunity. (Doc. 52 at 6, Doc. 53 at 21). The doctrine of qualified immunity provides that government officials performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); Saucier v. Katz, 533 U.S. 194, 200-01 (2001). Qualified immunity provides not only a defense to liability, but "immunity from suit." Hunter v. Bryant, 502 U.S. 224, 227 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). To determine whether Defendant Giehl or Defendant Farrell is entitled to qualified immunity, the court must analyze two factors: 1) whether the plaintiff has shown facts that make out a constitutional rights violation, and if so, 2) whether those rights were "clearly established" at the time of the incident. Pearson v. Callahan, 555 U.S. 223, 232 (2009).

At the present stage of this case, and based on the above discussion, it is premature to determine whether the Individual Defendants are entitled to qualified immunity. See Williams v. Papi, 30 F.Supp.3d 306, 314 (M.D. Pa. 2014) ("[T]he Third Circuit has cautioned that 'it is generally unwise to venture

into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases'") (quoting Newland v. Reehorst, 328 F.App'x. 788, 791 n.3 (3d Cir. 2009)). As in the Williams case, the court finds that "a determination of qualified immunity is inappropriate at the pleading stage" in the present case. Id. The plaintiff has stated cognizable constitutional claims under the Fourth Amendment against the Individual Defendants. The plaintiff alleges that during his arrest, Defendant Giehl and Defendant Farrell forced his head into the pavement and continued to hit his head during the arrest which, if true, would be a violation of a clearly established constitutional right. The plaintiff maintains that he did not resist the officers in any way. Further, the rights under the Fourth Amendment were sufficiently clear that the Individual Defendants should have known that this use of excessive force violated those rights.

After discovery is conducted by the parties and the factual record is fully developed, the Individual Defendants can re-assert the qualified immunity defense in a summary judgment motion if appropriate. See Kopec, 361 F.3d at 777 ("defendant[] can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.") (citations omitted). The record does not support finding that the Individual Defendants are entitled to qualified immunity at this time.

### ii. The John Doe Defendants

The City of Pittston argues that the claims against the unnamed police officers, John Does I-XX, and the unnamed municipalities, John Doe Boroughs/Cities/Counties XXI-XXV, (collectively the "John Doe Defendants"), must be dismissed under Fed. R. Civ. P. 4(m) because the plaintiff is unable to serve them within the 120 days after the complaint was filed (Doc. 49 at 4). The City of Pittston additionally argues that claims against the unnamed defendants are improper under Third Circuit precedent. (Id. at 4-5). The plaintiff did not respond to the City of Pittston's Rule 4(m) argument. Regardless of plaintiff's lack of response, Rule 4(m) mandates the dismissal of the claims against the John Doe Defendants because plaintiff has not served them with a summons within the 120-day period. Beckerman v. Weber, 317 F. App'x 125, 128 (3d Cir. 2008); Baumgardner v. Ebbert, 535 F. App'x 72, 77 n.7 (3d Cir. 2013). Since the causes of action against the John Doe Defendants can be dismissed on this procedural basis alone, the court deems it unnecessary to discuss the merits of the City of Pittston's substantive argument. The plaintiffs' claims against the John Doe Defendants will be dismissed without prejudice.

### iii. The Municipal Defendants

Under Count III, the plaintiff alleges that the Municipal Defendants "developed and maintained policies and/or customs exhibiting deliberate

indifference to the constitutional rights of persons, which caused the violation of Mr. Spencer's rights." (Doc. 43 at ¶62). The Municipal Defendants argue that the plaintiff has merely pled conclusory allegations of liability, and that the plaintiff has not identified any specific policy or custom that the municipalities have adopted or followed that violate the plaintiff's rights (Doc. 49 at 9-12, Doc. 52 at 8-15, Doc. 53 at 15-17, Doc. 55 at 5-6). Under the Supreme Court precedent of Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 694 (1978), a municipality can be held liable under §1983 only if the plaintiff shows that the violation of the plaintiff's federally protected rights resulted from the enforcement of a "policy" or "custom" of the local government. A court may find that a municipal policy exists when a "'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). It is also possible for a court to find the existence of a municipal policy in "the isolated decision of an executive municipal policymaker." City of St. Louis v. Praprotnik, 485 U.S. 112, 139 (1988). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." Andrews, 895 F.2d at 1480 (citations omitted). There must be a "direct causal link" between the municipal policy or custom and the alleged constitutional violation. City of Canton, Ohio v. Harris, 489

U.S. 378, 385 (1989).

Here, the plaintiff has failed to allege sufficient facts to hold the Municipal Defendants liable. In the amended complaint, the plaintiff claims that it was the "policy and/or custom" of the Municipal Defendants to file false charges against victims of police abuse to cover up the misconduct. (Doc. 43 at ¶64). Plaintiff further alleges that the Municipal Defendants "adopted and maintained for many years a recognized and accepted policy, custom and practice of systematically assaulting and battering suspects and subjecting individuals to the same type of treatment and false charges to which Mr. Spencer was subjected." (Id. at ¶67). Offering no distinction as to whether he is referring to a policy or custom (or both), the plaintiff makes vague allegations without support against the municipalities. The plaintiff does not identify the official proclamation, policy, or edict issued by a municipal decisionmaker that resulted in the deprivation of his rights. Nor can he point to any specific decision made by an executive municipal policymaker.

In his opposition papers, the plaintiff contends, "What is clear from facts alleged is that defendant police officers acted with rampant disregard for policies and procedures in place by municipal defendants." (Doc. 59 at 12, Doc. 60 at 14, Doc. 61 at 12, Doc. 62 at 12). However, the plaintiff subsequently admits that he needs discovery to identify these specific policies and procedures. (Id.). The court would be hard-pressed to accept the plaintiff's submission that the defendants acted in contravention of municipal

policies when the plaintiff is unable to describe those policies. Referring to the allegations in the amended complaint, the plaintiff does not mention any municipal policy that defendant police officers disregarded, resulting in constitutional violations. The plaintiff is not allowed to proceed with discovery in order to substantiate his pleadings. Such tactics constitute "fishing expeditions" that judges are tasked with preventing and that the Supreme Court in Twombly prohibits. See Twombly, 550 U.S. at 577.

Moreover, the plaintiff does not cite any examples to support the existence of a custom other than the lone incident involving him. To rely on one isolated incident involving low-level officers as the basis for the existence of custom, and then to hold the city liable for that custom, is precisely the kind of *respondeat superior* argument rejected in Monell. See Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) (citing Monell, 436 U.S. at 694).

The plaintiff additionally claims that it was the "policy and/or custom" of the municipal defendants to inadequately supervise and train their police officers, resulting in unprovoked assaults of suspects and false reports of offenses. A municipality can only be held liable for inadequacy of police training under §1983 if the failure to train amounts to "deliberate indifference to the constitutional rights of its inhabitants," with the rationale being that "the need for more or different training is so obvious, and the inadequacy [is] so likely to result in the violation of constitutional rights" that the municipality can be held liable for deliberate indifference to the need for adequate training.

[Harris, 489 U.S. at 390-392](). In order to satisfy this standard, the plaintiff must identify the specific deficiency in the municipal training program, and the identified deficiency has to be "closely related to the ultimate injury." Id. at 391.

Here, the plaintiff does not specify how the training of each municipality was deficient but merely points to the alleged, resulting violations of its officers. The plaintiff also fails to demonstrate the causal link between the deficient training of the municipalities and the unconstitutional conduct of their police officers. Not requiring this showing and adopting lesser standards of fault and causation "would open municipalities to unprecedented liability under §1983." Id. at 391. Accordingly, the plaintiff's amended complaint does not meet the pleading standard to hold the municipalities liable in the instant matter. The motions to dismiss the claims against the Municipal Defendants under Count III will be granted.

### B. Fourteenth Amendment

The plaintiff alleges that the actions or inactions of the defendants deprived him of due process rights pursuant to the Fourteenth Amendment. (Doc. 43 at ¶45). The defendants correctly argue that a cause of action for excessive force should not be analyzed under the generalized concept of due process. (Doc. 52 at 15-17, Doc. 53 at 11-14). The Supreme Court has held that "[a]ll claims that law enforcement officers have used excessive force -

deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a substantive due process approach." Graham, 490 U.S. at 386; see also Albright v. Oliver, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process,' must be the guide for analyzing these claims.") (internal quotation marks omitted); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260–61 (3d Cir. 2010). "Under the incorporation doctrine, the Fourth Amendment and other provisions of the Bill of Rights apply on their face only to the federal government, and were incorporated against the states later by operation of the Fourteenth Amendment's Due Process Clause." Williams, 30 F.Supp.3d at 312 (citing Terry v. Ohio, 392 U.S. 1, 8 (1968) (describing "the Fourth Amendment, made applicable to the States by the Fourteenth"). Thus, the Fourth Amendment, as analyzed above, is the Amendment that corresponds to an officer's excessive force during an arrest and not the Fourteenth Amendment. The defendants' motions to dismiss the plaintiff's Fourteenth Amendment claims will be granted.

## VI.  CONCLUSION

The plaintiff has stated cognizable §1983 claims of deprivation of his

Fourth Amendment rights under Counts I and II against Defendant Giehl and Defendant Farrell. As such, the Individual Defendants' motions to dismiss these claims will be denied. The defendants' motions will be **GRANTED** to the extent that: 1) Each of the plaintiff's claims against the unnamed individual defendants, John Does I-XX, and the unnamed municipal defendants, John Doe Boroughs/Cities/Counties XXI-XXV, will be dismissed without prejudice; 2) Each of the plaintiff's claims under Count III against the Borough of Moosic, the Borough of Hughestown, the Borough of Exeter, and the City of Pittston will be dismissed in its entirety with prejudice; and 3) Each of the plaintiff's Fourteenth Amendment claims will be dismissed in its entirety with prejudice. In all other respects, the motions are **DENIED**.

An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 29, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-1704-01.wpd